Case No. CV 17-4090-DOC  Date: September 24, 2018
BK Case No. 16-13222-SK

Title: IN RE SARA AURA MENJIVAR

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Deborah Lewman | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |
| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):** ORDER AFFIRMING BANKRUPTCY COURT'S ORDER ON WELLS FARGO'S PROOF OF CLAIM AND DISMISSAL OF CHAPTER 13 PROCEEDINGS [14]

Before the Court is an appeal filed by Debtor-Appellant Sara Aura Menjivar ("Debtor" or "Appellant") (Dkt. 14). Debtor challenges a United States Bankruptcy Court for the Central District of California ("Bankruptcy Court") order sustaining in part and overruling in part Debtor's objection to Appellee Wells Fargo Bank, N.A.'s ("Wells Fargo" or "Appellee") amended proof of claim. Debtor also appeals the Bankruptcy Court's dismissal of her underlying Chapter 13 case for infeasibility. The Court finds this matter appropriate for resolution without oral argument. Fed. R. Civ. P. 78; L.R. 7-15. Having reviewed the papers and considered the parties' arguments, the Court AFFIRMS the Bankruptcy Court's order and dismissal of the Chapter 13 case.

## I.　Relevant Facts

### A.　Debtor Executes Loan And Deed Of Trust

On July 9, 2007, Debtor and non-filing borrower Benjamin Menjivar (collectively "Borrowers") executed an Adjustable Rate Mortgage Note Pick-a-Payment Loan in the original principal amount of $551,650.00 in favor of World Savings Bank, FSB ("Note"). Appellant's Excerpts of Record ("AER") 0914–19. Also on July 9, 2007, Debtor executed a Deed of Trust ("Deed of Trust") in favor of World Savings Bank, FSB, against the property located at 1129 S 2nd St., Alhambra, California 91801 ("Property"). AER 0446–67. The Deed of Trust recorded as a first priority lien against the property on August 2, 2007, in the official records of the Los Angeles County Recorder's office. AER 0446.

The Note defines the term "deferred interest" in Paragraph 3(E). AER 0441. The Note provides: "From time to time, my monthly payments may be insufficient to pay the total amount of monthly interest that is due. If this occurs, the amount of interest that is not paid each month . . . will be added to my Principal and will accrue interest at the same rate as the principal." *Id*. The Note also defines the term "principal balance cap" in Paragraph 3(F). *Id*. The Note provides:

> "My unpaid principal balance can never exceed 125 percent of the Principal I originally borrowed, called "Principal Balance Cap." If, as a result of the addition of deferred interest to my unpaid principal balance, the Principal Balance Cap limitation would be exceeded on the date that my monthly payment is due, I will instead pay a new monthly payment. Notwithstanding Sections 3(C) and 3(D) above, I will pay a new monthly payment which is equal to an amount that will be sufficient to repay my then unpaid principal balance in full on the Maturity Date at the interest rate then in effect, in substantially equal payments."

*Id*. The Deed of Trust further provides, "The maximum aggregate principal balance secured by this Deed of Trust is $689,562.50, which is 125% of the original principal note amount." AER 0447.

### B.　Debtor Defaults On Loan And Files For Chapter 13 Relief

In January 2008, World Savings Bank, FSB, changed its name to Wachovia Mortgage, FSB, which then converted and merged with Wells Fargo in November 2009. AER 0469–79. In August 2010, Wells Fargo caused a notice of default to be recorded

against the Property reflecting loan arrears of $47,447.55. AER 0481–84. In November 2010, Wells Fargo caused a notice of trustee's sale to be recorded. AER 0491. In November 2015, Wells Fargo caused a subsequent notice of trustee's sale to be recorded with a sale date of January 4, 2016. AER 0494–95.

Debtor and co-borrower Benjamin Menjivar have filed five bankruptcies since the recording of the notice of default in August 2010. First, in January 2011, Debtor Sara Menjivar filed for Chapter 13 relief in Bankruptcy Case No. 2:11-bk-12361-EC, which was dismissed in March 2011. AER 0500–01. In February 2011, Benjamin Menjivar filed for Chapter 13 relief in Bankruptcy Case No. 2:11-bk-17774-WB, which was dismissed in December 2011. AER 0507–08. In December 2011, Benjamin Menjivar again filed a voluntary petition for Chapter 13 relief, which terminated in July 2014 upon entry of a Chapter 7 discharge. AER 0511–31. On March 15, 2016, Debtor filed the underlying voluntary petition for Chapter 13 relief, Bankruptcy Case No. 2:16-bk-13222-SK. AER 0037. On November 9, 2017, after the dismissal of the case underlying this appeal, Benjamin Menjivar and Debtor filed for Chapter 11 relief, Bankruptcy Case No. 2:17-bk-23881-WB. Appellant's Reply, Ex. 1 (Dkt. 26-1).

In the case on appeal with this Court, on March 29, 2016, Debtor filed her Chapter 13 plan ("Plan"). AER 0098–0105. The Plan provides for payments by Debtor of $825 per month for four years with a base plan amount of $39,600, which was estimated to pay 100 percent of allowed claims of nonpriority unsecured creditors. *Id*. The Plan listed Class 1a, 1b, and 5 creditors for a sub-total amount of $35,303.00. *Id*. Under Paragraph V(F), Debtor stated as a "miscellaneous provision" the "avoid lien on [Property]." *Id*. The Plan did not provide for a cure of the prepetition arrears owing to Wells Fargo or payment of ongoing mortgage payments. *See generally id.*

### C.     Wells Fargo Objects To Plan And Files Proof Of Claim

On May 6, 2016, Wells Fargo filed its objection to the confirmation of Debtor's Plan. AER 0142. In the confirmation objection, Wells Fargo stated it was in the process of filing a proof of claim ("Proof of Claim") for prepetition arrears amounting to $213,531.89, consisting of 74 delinquent mortgage payments from February 15, 2010, through March 15, 2016. *Id*. On July 8, 2016, Wells Fargo filed the Proof of Claim for a total secured claim of $722,901.83 and a necessary cure amount of $212,139.92. AER 0161–0215.

On August 4, 2016, Debtor filed her objection to the Proof of Claim. AER 0217–0407. Debtor argued that the claim was unenforceable because of the 2014 discharge in Benajmin Menjivar's Chapter 7 bankruptcy; and Debtor had a then-pending state court

action for recission. *Id.* Moreover, Debtor argued that the claim included unmatured interest in the amount of $129,784.16 not identified on a March 1, 2016 mortgage statement ("March 2016 Mortgage Statement").[1] *Id*. The March 2016 Mortgage Statement provided a total payment balance of $213,058.14. AER 0340. Debtor argued that the accounting in the Proof of Claim was incompatible with available records. *Id*. Debtor requested the Proof of Claim be disallowed in its entirety and be deemed not an allowed secured claim. *Id*. In her reply, Debtor also raised the allegation that all the amounts identified in the arrears as "Principal & Interest Due of $183,642.30" is "Deferred Interest" under the Note that was "supposed to be added to the principal and accrue interest at the same rate as the principal." AER 0889. Debtor requested the Proof of Claim be disallowed in its entirety and be deemed not an allowed secured claim. AER 0217–0407.

On September 16, 2016, Wells Fargo filed its amended proof of claim ("Amended Proof of Claim"). AER 0892–0948. The Amended Proof of Claim reflected a reduced total debt of $722,585.31 due to a $316.52 reduction in the interest due. *Id*. The necessary cure amount of $212,139.92 did not change. *Id*.

### D.     Bankruptcy Court Addresses Debtor's Claim Objection

The Bankruptcy Court first addressed Debtor's claim objection on September 21, 2016, and ordered Wells Fargo to file a declaration explaining a discrepancy regarding the unpaid amount of $210,006.71 in the Debtor's March 2016 Mortgage Statement and the $212,139.92 in arrears identified in the Amended Proof of Claim. AED 0953. On November 14, 2016, Wells Fargo filed a declaration attempting to explain the discrepancy. AER0984. On November 30, 2016, the Bankruptcy Court held another hearing on the Amended Proof of Claim and held that despite the declaration "the numbers still don't add up." AER 1114. The Bankruptcy Court allowed Wells Fargo to file a subsequent declaration explaining the discrepancy and continued the hearing to February 2017. AER 1120–21. On January 12, 2017, Wells Fargo filed a supplemental declaration in support of its opposition to the claim objection. AER 1133–99. This declaration provided a comprehensive breakdown reconciling the discrepancies between the March 2016 Mortgage and the arrears in the Amended Proof of Claim. *Id*. Wells Fargo explained that at the time Debtor filed her Chapter 13 bankruptcy petition, the loan was due for 74 monthly payments for February 15, 2010 through and including March

---

[1] On March 1, 2016, Wells Fargo mailed a mortgage statement to the Borrowers, which is the last mortgage statement prior to the filing of this Chapter 13 case. AER 0339–41.

15, 2016. AER 1136. Each of Debtor's monthly payments consist of principal, interest and escrow, as shown in the table below:

| Number of Missed Payments | From | To | Missed Principal and Interest | Missed Escrow | Monthly Payment Amount | Total Amounts Missed |
|---|---|---|---|---|---|---|
| 7 | 2/15/10 | 8/15/10 | $2050.45 | $391.38 | $2441.83 | $17,092.81 |
| 12 | 9/15/10 | 8/15/11 | $2204.23 | $391.38 | $2595.61 | $31,147.32 |
| 12 | 9/15/11 | 8/15/12 | $2369.54 | $391.38 | $2760.92 | $33,131.04 |
| 12 | 9/15/12 | 8/15/13 | $2547.25 | $391.38 | $2938.63 | $35,263.56 |
| 1 | 9/15/13 | 9/15/13 | $2738.29 | $391.38 | $3129.67 | $31,29.67 |
| 11 | 10/15/13 | 8/15/14 | $2738.29 | $401.44 | $3139.73 | $34,537.03 |
| 3 | 9/15/14 | 11/15/14 | $2708.37 | $401.44 | $3109.81 | $9,329.43 |
| 5 | 12/15/14 | 4/15/15 | $2708.37 | $408.90 | $3117.27 | $15,586.35 |
| 4 | 5/15/15 | 8/15/15 | $2708.37 | $411.86 | $3120.23 | $12,480.92 |
| 7 | 9/15/15 | 3/15/16 | $2639.57 | $411.86 | $3051.43 | $21,360.01 |

*Id*. The total payment amounts missed during this time period is $213,058.14. *Id*. The declaration further explains how the March 2016 Mortgage Statement is consistent with the Amended Proof of Claim. AER 1138. Both documents reflected unpaid payments owing through February 15, 2016, in the amount of $210,006.71 and total payments owing as of March 15, 2016, as $213,058.14. AER 1139.

The Bankruptcy Court issued a tentative ruling on February 15, 2017, reflecting its satisfaction with Wells Fargo's explanation of the inconsistency. AER 1337. But the tentative also noted issues raised by Debtor regarding the escrow and deferred interest amounts. AER 1337–39. First, the Bankruptcy Court tentatively held that Wells Fargo "has not submitted any evidence demonstrating that a written demand for escrow payments was sent to Debtor." AER 1338. Second, the Bankruptcy Court advised that there appeared to be a discrepancy between the definition of "Deferred Interest" in the March 2016 Mortgage and the Deed of Trust and that Wells Fargo had not responded to Debtor's argument regarding the allocation of unpaid interest on the loan or the effect of the Principal Balance Cap. AER 1338–39. The Bankruptcy Court noted Debtor's argument that all unpaid interest should be categorized as "Deferred Interest" that must be added to the principal balance of the loan and that the debt should be classified as only partially secured due to the provision in the Deed of Trust capping the principal balance secured at $551,650. *Id*.

On February 16, 2017, the Bankruptcy Court held a hearing on the tentative order and the deferred interest issue. Wells Fargo argued that the loan should be classified as

entirely secured because the principal balance does not exceed the aggregate amount set forth in the deed of trust. AER 1210. At the hearing the Bankruptcy Court requested further evidence regarding the deferred interest. AER 1217. Specifically the Bankruptcy Court requested (1) information regarding how Wells Fargo came to the conclusion that when no payments are made it is not considered deferred interest; and (2) payment history detailing the application of payments and breakdown of deferred interest included in unpaid principal balance. *Id*. The Bankruptcy Court held that there was "extremely ambiguous" language that suggested that "any unpaid interest becomes deferred interest and is added onto the principal balance." AER 1211. The Bankruptcy Court noted that the March 2016 Mortgage Statement provides:

> "Deferred interest with many of our loans when you choose to pay the minimum amount your payment may not cover the total interest due. The unpaid portion called deferred interest is added to your loan balance and incurs interest at the same rate as your loan."

*Id*. And the Deed of Trust provides that:

> "From time to time my monthly payments may be insufficient to pay the total amount of monthly interest that's due."

*Id.* Thus in the eyes of the Bankruptcy Court, if Debtor did not make any payment then the amount of interest that was not paid each month, called "deferred interest," would be added to the principal and accrue interest at the same rate as the principal. The Bankruptcy Court noted that based upon the documentation in the record, "it appears that if you don't pay enough each month then that's deferred interest and if you don't pay anything each month, then that's deferred interest [too]." AER 1212. The Bankruptcy Court ordered Wells Fargo to submit admissible evidence regarding the deferred interest issue and continued the hearing until May 2017. AER 1216–17.

     On May 1, 2017, Wells Fargo filed the Declaration of Monica Cameron ("Cameron Declaration") in support of the opposition to Debtor's claim objection. AER 1243. Wells Fargo attached a copy of the Deferred Interest Acknowledgement signed by Debtor and Benjamin Menjivar, which details the terms of the deferred interest. *Id*. The acknowledgment form explains deferred interest as occurring "if you mortgage payment is not large enough o pay all of the scheduled interest due on your loan. For example, if you owe $1,000 in interest in a given period but you make a $900 payment that I authorized by your loan, the $100 shortfall is deferred interest that I added to your loan balance[.]" AER 1310.

The Cameron Declaration also attached as Exhibit 7 a payment history starting with the first payment due on September 15, 2007 through January 15, 2009. AER 1249. The payment history starts with a principal balance of $551,650.00 and reflects that from September 15, 2007 to January 15, 2010, the principal balance increased $7,262.40 as a result of Debtor choosing to make minimum payments. *Id*. Wells Fargo provided further information demonstrating the principal balance increase of $7,984.37 from January 15, 2009 through March 1, 2016. *Id*.

Wells Fargo also explained that deferred interest reflected only those amounts that were added to the principal balance as a result of the borrowers' choice to make the minimum payment where the minimum payment did not include all of the scheduled interest due on the loan. AER 1250. If the borrowers did not make any payment, no amounts were added to the principal balance. *Id*. And Wells Fargo restated that at no time has the unpaid principal balance owing on the Note obligation exceeded 125% of the original principal note amount. AER 1253. Thus according to the Cameron Declaration, Wells Fargo holds a fully secured first priority lien against Debtor's residence which totaled $722,585.31, including the unpaid principal balance of $566,896.77. AER 1254.

On May 11, 2017, the Bankruptcy Court held that it was convinced by the evidence submitted by Wells Fargo with the "exception of a slight change." AER 1344. Wells Fargo "distinguishes between no payments being made and less than full payments being made under the [pick-a-payment Loan]." *Id*. The only change to the Amended Proof of Claim implemented by the Bankruptcy Court was the allowance of a difference of "about $7,000," reducing the principal balance from $566,896.77 to $559,766.96. *Id*. The reason for the Bankruptcy Court's reduction was that according to the Wells Fargo declaration, there were numerous payments received on October 2, 2014, and the attachment to the Amended Proof of Claim did not reflect any payments received on that date. AER 1344–45. The Bankruptcy Judge "personally went back and tracked each one of the deferred interest payments[.]" *Id*. The Bankruptcy Court allowed a total principal of $599,076.96 and the arrears number of $212,139.92 remained unchanged. *Id*.; AER 1366–67. The Bankruptcy Court then dismissed the underling Chapter 13 case due to infeasibility. AER 1358; AER 1368.

## II.     Legal Standard

An order overruling a claim objection can raise legal issues (such as the proper construction of statutes and rules) which we review de novo, as well as factual issues (such as whether the facts establish compliance with particular statutes or rules), which we review for clear error. *In re Rader*, 488 B.R. 406, 409 (B.A.P. 9th Cir. 2013) (citation omitted). A finding is clearly erroneous if it is "illogical, implausible, or without support

in the record." *In re Gill*, 574 B.R. 709, 714 (B.A.P. 9th Cir. 2017). Whether the bankruptcy court's procedures comport with due process is reviewed de novo. *Price v. Lehtinen (In re Lehtinen)*, 564 F.3d 1052, 1058 (9th Cir. 2009), *abrogated on other grounds by Gugliuzza v. Fed. Trade Comm'n (In re Gugliuzza)*, 852 F.3d 884 (9th Cir. 2017). We review the bankruptcy court's decision to dismiss a case for abuse of discretion. *In re Leavitt*, 171 F.3d 1219, 1223 (9th Cir. 1999).

### III.     Discussion

The primary issue on appeal is whether the Bankruptcy Court properly overruled in part and sustained in part Debtor's objection to Wells Fargo's Amended Proof of Claim. We review the legal issues de novo and the factual issues for clear error.

#### A.     Bankruptcy Court Order On Claim Objection

Debtor's primary argument on appeal is that the Bankruptcy Court disregarded its own skepticism regarding the Amended Proof of Claim and denied Debtor due process in allowing the filing of the Cameron Declaration without objections. *Id*. at 6. While Debtor's short brief is far from clear, Debtor appears to argue that the Wells Fargo claim should be equal only to an amount not to exceed 125 percent of the original amount of the Note, or $689,562.50. Wells Fargo responds that the Amended Proof of Claim is prima facie evidence of the legitimacy and sum of the claim and that Debtor was afforded due process through multiple hearings and supplemental submissions. Appellee's Brief at 28–31.

##### 1.     Claim Objection Ruling

Debtor briefly argues that the Bankruptcy Court's factual findings regarding deferred interest are clearly erroneous because it "makes no sense that a payment less than the amount due results in deferred interest, but no payment at all results in no deferred interest at all." Reply at 7–8. Debtor points to language in the Note and Deed of Trust related to both deferred interest and the principal cap in support of her argument. *Id*. According to Debtor, if no payments were made, the interest that was not paid should have been added to the principal and accrued interest at the same rate as the principal and count toward the Principal Balance Cap.

The Court understands Debtor to argue that the Bankruptcy Court erred in accepting Wells Fargo's explanation of the deferred interest issue because two statements in the Cameron Declaration are facially dissonant. Wells Fargo states at once that (1) in 2009 and 2010 no payments were received; and (2) from January 2009 through March

2016 the principal balance increase because of minimum payments. According to Debtor, "[i]t can't be both." Appellant's Brief at 7. Moreover, Debtor argues that the Bankruptcy Court's erred in rejecting $7,129.81 from the principal balance without adjusting the prepetition arrearage. *Id*. at 7–8. But Debtor provides the Court with nothing more. Debtor does not cite to any specific accounting in the Amended Proof of Claim or elsewhere to support her position.

Wells Fargo argues that its Amended Proof of Claim constitutes prima facie evidence of the legitimacy and sum of the claim and that the declarations submitted explained the deferred interest issue raised by Debtor. Appellee's Brief at 28–29. As explained in the Cameron Declaration, if Debtor did not make any payment, no amounts were added to the principal balance. AER 1250. For example, in 2009 and 2010, no payments were received, and as a result the principal balance remained the same during that time and did not increase. *Id*. The Amended Proof of Claim reflects that in January 2009 through March 2016, the principal balance increased a total of $7,984.37 because Debtor chose to make the minimum payment, which was insufficient to pay the total scheduled interest due. *Id*. And the unpaid principal balance owing on the Note obligation did not exceed 125% of the original principal note amount. AER 1253. The claim included an unpaid principal balance of $566,896.77, which is below the $689,562.50 principal cap. AER 1254.

A proof of claim executed and filed in accordance with the Federal Rules of Bankruptcy Procedure constitute prima facie evidence of the validity and amount of the claim. Fed. R. Bankr. P. 3001(f). This evidentiary presumption is a rebuttable one. *In re Garvida*, 347 B.R. 697, 706 (9th BAP Cir. 2006). Here, Wells Fargo executed and filed the Amended Proof of Claim in accordance with the Federal Rules of Bankruptcy Procedure, and the claim provides prima facie evidence as to the validity and amount of the claim. The Bankruptcy Court found Wells Fargo's explanations in their declaration sufficient and held that Debtor did not supply sufficient counter-evidence to overcome the presumption of validity.

The Court has reviewed the accounting in the Cameron Declaration and the Amended Proof of Claim. The Amended Proof of Claim and supplemental submissions reflect that from September 15, 2007 to October 30, 2008, the principal balance increased as a result of minimum payment amounts. AER 1250. When Wells Fargo received no payments, no amounts were added to the principal balance. Moreover, the principal balance did not exceed the cap. The Court rejects Debtor's basis for the Bankruptcy Court's supposed clear error. First, Debtor has not provided counter evidence to overcome the presumption of validity, and second, Wells Fargo's statements in the

Cameron Declaration regarding the principal balance demonstrate why Wells Fargo has a valid claim.

It follows that the Bankruptcy Court appropriately dismissed the underlying bankruptcy case due to infeasibility given the allowance of Wells Fargo's arrears in the amount of $212,139.92. Debtor's Plan did not provide for a cure and the monthly net income of $825.00 was insufficient to cure the arrears. AER 0098–0105.

### 2. Due Process

Next, Debtor argues that the Court should reverse the Bankruptcy Court order because the Bankruptcy Court "explicitly prohibited Appellant from objecting to, responding to, or arguing against Wells Fargo's declaration submitted on May 1, 2017." Appellant's Brief at 8. Wells Fargo argues that the Bankruptcy Court properly reviewed and considered the multiple and lengthy pleadings and additional evidence submitted by both parties over the span of nine months. Appellee's Brief at 31.

We review whether the bankruptcy court's procedures comport with due process de novo. *In re Lehtinen*, 564 F.3d at 1058. The Bankruptcy Court held four hearings on the claim objection and allowed Debtor an opportunity to respond and raise objections to the Court's decision on the claim objection at the May 11, 2017 hearing after issuing a tentative order. Debtor had over a week to review the Cameron Declaration and present the Bankruptcy Court with specific objections to the accounting. Indeed, Debtor was heard at length during the final hearing. AER 1343-50. Debtor had months to introduce evidence sufficient to rebut the Amended Proof of Claim and failed to do so. Debtor was afforded due process.

### B. Vacatur

Next, Debtor argues that because the Bankruptcy Court "actually dismissed Appellant's bankruptcy case prior to entering its order on the claim objection" the Court may not be able to give Appellant effective relief and thus must dismiss the appeal as moot. Appellant's Brief at 9. Wells Fargo argues that procedurally the Bankruptcy Court made its ruling on Debtor's claim objection prior to dismissing the case. Appellee's Brief at 32.

First, Debtor is factually incorrect. The Bankruptcy Court dismissed the bankruptcy case after its ruling on the claim objection. AER 1350-57. The Bankruptcy Court has authority to issue an oral order and effectuate its ruling after dismissal of the case. Second, the Bankruptcy Court retains ancillary jurisdiction to interpret and

effectuate its orders. *See Aheong v. Mellon Mortgage Co. (In re Aheong)*, 276 B.R. 233, 240 n.8 (9th Cir. BAP 2002). The Court will not grant Appellant's request to find her own appeal moot given the timeline of the oral rulings and the Bankruptcy Court's retention of ancillary jurisdiction.

### C. Effect Of Other Bankruptcy Proceedings

Debtor raises for the first time in her Reply Brief an argument that a subsequent Chapter 11 filing makes this appeal "practically moot." On November 9, 2017, Appellant and her spouse Benjamin Menjivar filed as joint debtors a voluntary Chapter 11 bankruptcy petition, Case No. 2:17-bk23881-WB. According to Debtor, for "real-world reasons not requiring deep analysis" the filing of the Chapter 11 case and Wells Fargo's claim in the Chapter 11 case make their own appeal "practically moot." Appellant's Reply Brief at 2.

First, the arguments raised for the first time in the reply brief are waived. *Sophanthavong v. Palmateer*, 378 F.3d 859, 871–72 (9th Cir. 2004) (refusing to reach argument raised for the first time in a reply brief). The Court strikes these new arguments as improper. The Court also notes that Wells Fargo has carved out language in filings in the Chapter 11 proceedings regarding to the effect of this appeal. *See* Bankr. Dkt. 93 ("Creditor particularly objects to incomplete disclosure of the status of the pending appeal in the Debtors related Chapter 13 bankruptcy case and its impact in the confirmation of the pending Chapter 11 case[.]"). Indeed, on September 20, 2018, Debtor filed a Status Report (Dkt. 27) related to the Chapter 11 proceedings. Debtor included language in from the Second Amended Chapter 11 Plan and Disclosure Statement that proposes a treatment of the outcome of this appeal. *Id*. Thus the most recent bankruptcy filing does not moot this appeal.

Debtor also appears to argue that the Bankruptcy Court order should be reversed because of a previous Chapter 7 discharge related to a bankruptcy proceeding of Debtor's spouse Benjamin Menjivar.[2] To the extent Debtor is arguing that the discharge impairs Wells Fargo's Deed of Trust, this argument fails as a matter of law because a creditor's right to foreclose on a lien survives bankruptcy notwithstanding the discharge of personal liability. *Johnson v. Home State Bank*, 501 U.S. 78 (1991). A discharge extinguishes only "the personal liability of the debtor." *Id*. at 83 (citations omitted). A creditor's right to

---

[2] In her Reply, Debtor also states that she is abandoning her complete lien avoidance for a new cap-based argument, stating for the first time that "no claim may exceed the cap of $689,562.50." Reply at 3. First, this argument is stricken because it is improperly raised for the first time on reply. Second, the cap in the Note and Deed of Trust relates to the unpaid principal balance. The unpaid principal balance in the Amended Proof of Claim is below the 125 percent cap. AER 1253.

foreclose on the mortgage survives or passes through the bankruptcy. *Id*. Thus the Court will not vacate or reverse on these grounds.

## IV.　Disposition

For the foregoing reasons, the Bankruptcy Court's order on the Debtor's objection to the Amended Proof of Claim and dismissal of the Chapter 13 case is AFFIRMED.

The Clerk shall serve this minute order on the parties.


cc Bankruptcy Court and BAP


MINUTES FORM 11
CIVIL-GEN　　　　　　　　　　　　　　　　　　　　　　　　　Initials of Deputy Clerk: djl